**ATCHISON, TOPEKA & SANTA FE RY. CO.
v. SIMPSON et al.**

No. T-568.

United States District Court
D. Kansas.

Jan. 29, 1953.

C. J. Putt, W. E. Treadway, Henry Schulties, Jr., and J. B. Reeves, Topeka, Kan., for plaintiff.

Byron M. Gray, Topeka, Kan., of Myers & Gray, Topeka, Kan., for defendants.

MELLOTT, Chief Judge.

The single issue is the proper charge for weighing 620 carloads of wheat shipped from Pauline, Kansas during the fall and winter of 1950-1951. The facts are found to be as stipulated:

"The defendant, Emergency Grain Storage, Inc., made the shipments described in the complaint and is legally chargeable with all applicable charges assessed thereon.

"All of the shipments moved from Pauline, Kansas, a point on the line of plaintiff approximately six miles south of Topeka, Kansas and moved through Topeka, Kansas at which point the loaded cars were weighed on railway scales.

"From Pauline, Kansas to the destinations to which the shipments moved, the route via Topeka, Kansas was open and defendants were entitled under the applicable tariffs to have the shipments moved through Topeka, Kansas.

"The shipments were weighed at the request of the consignor, the request being for weights at the railway scales nearest to origin, such requests being made before the shipments moved, it being the purpose and intent of the shipper to procure origin weights.

"There are no railway scales at Pauline, Kansas on which the cars could have been weighed, otherwise the cars would have been weighed at Pauline rather than at Topeka, Kansas, the latter point being the first point from Pauline, Kansas at which the cars could have been weighed on railway scales."

The pertinent portions of the tariff, duly filed with the Interstate Commerce Commission and in effect at the time the shipments involved in the complaint moved, provided:

"Section D.—When a car is weighed * * * loaded at request of * * * the consignor * * * a charge will be made each time car is weighed * * *:

* * * * * *

(3) On railway scales:

* * * * * *

(b) Outbound:

**✳** **✳** **✳** **✳** **✳** **✳**

For weighing loaded car, when the weight ascertained is not used for assessment of freight charges .........$2.25

(c) Enroute:

When weighed enroute at request of consignor .......$5.36"

Item 50. "Weights—where ascertained. Carload freight should be weighed at point of origin, or as near thereto as practicable."

The carrier argues the loaded cars were weighed at the request of the consignor at a railroad freight point between the point of origin and the points of destination and were therefore weighed enroute; hence, that the higher rate should be applied. The shipper contends that where two provisions of a tariff are equally appropriate it is entitled to have applied the one specifying the lower rate.[1] The parties also differ as to whether there is any ambiguity in the published tariffs, the shipper relying upon the rule that in the event of ambiguity the doubts are to be resolved in its favor[2] while the carrier, although recognizing the rule, says it is inapplicable.

**▮** This court's power is limited. It is the duty of the carrier to collect and of the shipper to pay the full charges prescribed in the lawful tariff;[3] and equitable considerations may not justify doing otherwise.[4] If there is no ambiguity, the construction of the tariff should be "like that commonly made by courts when called upon to construe and apply any other document."[5] The provisions set out above do not seem to be ambiguous or in conflict with each other. As the carrier points out upon brief, it is impractical to maintain scales at every point of origin and destination.[6] Yet a shipper desiring to procure origin weights for its outbound shipments should not be deprived of an opportunity to do so nor penalized unduly because of the location of its commodity at a place other than where track scales are located. That, it seems to the court, was the genesis of the provision relied upon by the shipper in this case, under which it made the request, in the language of the stipulation, "before the shipments moved, * * * to procure origin weights." The proviso for weighing "enroute," on the other hand, connotes an interruption in the movement of a loaded car after it has left its point of origin. Manifestly, a weighing then entails more labor and inconvenience to the carrier and justifies the collection of a higher rate.

The conclusion which the court has reached, viz., that the charges should be computed under (b) supra, it is believed, comports with the general scheme and spirit of the tariff provisions pertaining to the weighing of cars when the weight ascertained is not to be used in the assessment of freight charges. Thus under the provisions of (3) supra, indicated by asterisks, substantially the same charge is made for weighing empty or loaded cars "before placement" as is made under (b). The charge for weighing "after placement," however, corresponds to the charge made for weighing "enroute" under (c).

The defendant concedes it is indebted to the plaintiff for the weighing charges, computed as the court has now approved. Whether the offer absolves it from any part of the costs may await settlement of the form of judgment under the Federal Rules and this Court's Rules of Practice. The judgment, to be prepared by counsel for the plaintiff, should, however, include interest on the charges from the dates they were incurred.

1. United States v. Gulf Refining Co., 2°8 U.S. 542, 546, 45 S.Ct. 597, 69 L.Ed. 1082.

2. Wilbanks & Pierce v. A. & W. P. R. Co., 235 I.C.C. 371.

3. Pillsbury Flour Mills Co. v. Great Northern Ry. Co., 8 Cir., 25 F.2d 66.

4. Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409, rehearing denied 308 U.S. 631, 60 S.Ct. 65, 84 L.Ed. 526.

5. W. P. Brown & Sons Lumber Co. v. Louisville & N. R. Co., 299 U.S. 393, 398, 57 S.Ct. 265, 81 L.Ed. 301.

6. Cf. I. T. Welch v. Minneapolis, St. P. & S. Ste. Marie Ry. Co., 220 I.C.C. 289.